IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIMBERLY SEAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06CV317-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Kimberly Seago brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On August 13, 2003, plaintiff filed an application for Supplemental Security Income. On April 20, 2005, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on August 10, 2006. The ALJ concluded that plaintiff suffered from the severe impairments of "schizoaffective disorder, personality disorder, not otherwise specified; and cannabis abuse and anxiolytic abuse." (R. 22). He found that plaintiff's impairments, considered in combination, did not

meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work as a short order cook and other jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On February 3, 2006, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

In her application for benefits, plaintiff asserts that she became unable to work due to a "mental breakdown" and because she broke her foot. (R. 72).[1] She also claims that she has pain in her hands. (R. 89). The medical records reveal that plaintiff received mental health treatment in sporadic intervals between March 1993 and March 2005. (Exhibits 2F, 3F, 6F, 11F, 12F, 17F, 18F).[2] She broke her foot in July 2003 and had follow-up appointments relating to her foot injury in July and August 2003. (Exhibits 11F, 12F).[3] In early 2001, she complained to her physician of persistent hand pain; however, X-rays and clinical examination of her hands were normal. (Exhibit 12F).[4]

The ALJ concluded that plaintiff suffers from the "severe" impairments of schizoaffective disorder; personality disorder, not otherwise specified; cannabis abuse; and anxiolytic abuse. (R. 22). He found that she also had non-severe impairments, including: history of borderline diabetes mellitus, controlled with diet, with no complications; history of chronic pain of both hands, with negative examinations to date; and history of fractured

---

[1] Plaintiff's alleged onset date is December 11, 2002. (R. 72).

[2] Plaintiff was diagnosed at various times with major depressive disorder, anxiolytic dependence, cannabis abuse, adult antisocial behavior, schizophrenia, generalized anxiety disorder, attention deficit hyperactivity disorder, low average intellectual functioning, personality disorder, and schizoaffective disorder.

[3] At the hearing, plaintiff did not testify regarding any limitations due to her broken foot. To the contrary, she testified that she "could walk, walk, walk 'til [she's] tired and sometimes [she has] walked all night." (R. 364).

[4] Plaintiff received treatment for other illnesses and conditions, including symptoms of menopause, urinary tract infections, a kidney stone, a rash, rhinitis, and sinusitis. She does not contend that these conditions contribute to her disability.

left foot, without residual complications. (R. 18). In reaching his decision concerning plaintiff's residual functional capacity, the ALJ adopted the assessments of Dr. Soler, a consultative examiner, regarding plaintiff's physical residual functional capacity, and Dr. Dillon, a consultative psychologist, regarding plaintiff's mental residual functional capacity. (R. 21). The ALJ determined that plaintiff can perform a range of light work. He found that she can use her hands for simple gripping and fine manipulation at least frequently, that she experiences mild to moderate pain which occasionally interferes with concentration, persistence and pace, that her work should be low stress with only routine changes and require little independent judgment, and that she should work primarily alone, with no responsible or general public contact. (R. 21).

Plaintiff argues that the ALJ's finding regarding her residual functional capacity is not supported by substantial evidence because the ALJ did not credit the opinion of Dr. Curry Hammack, a consultative examiner, and did not explain his reasons for rejecting that opinion. She further argues that the ALJ's credibility determination is not supported by substantial evidence and that the ALJ erred in discrediting plaintiff's subjective complaints of pain, anxiety attacks, and side effects of medication.

<u>Dr. Hammack's Opinion</u>

Curry B. Hammack, Ph.D., conducted a consultative mental health examination of the plaintiff on June 13, 2002. Dr. Hammack stated:

> For the session, Ms. Seago was alert and fully oriented. She did present as an extremely high strung and restless individual. She thinks that she may have been ADHD in the past, and this is quite likely. She was, though, always very cooperative and pleasant to work with. She did respond to presented questions

4

>and gave adequate details. Language Skills seemed to be developed within the Low Average Range. There were no obvious Gross or Fine-Motor Coordination problems. No vision or hearing problems were noted. Ms. Seago's Recent and Remote Memory were fine. Short-Term memory was fair as she could repeat six digits forward and three digits backwards.
>
>Ms. Seago did not report any symptoms of psychosis. She does not view herself as being particularly depressed. However, she is quite anxious all the time and stays tense. She also has this ongoing restlessness going on, and this includes considerable difficulty in Focus and Sustained Attention, as well as staying on tasks. She states that she may start a task and then go on to three or four other tasks without completing any of them.
>
>Rapport was established and maintained with Ms. Seago. It is felt that the anxiety and restlessness would interfere some with her being able to relate to others or to handle tasks. It is quite likely she is rather scattered and would have difficulty staying on a particular task to completion. Insight, though seems adequate. He Judgment is fair, but would be compromised some by her Impulsivity and poor Attention Span.
>
>Focus and Concentration would be quite difficult for her for up to two hours. Ms. Seago has always worked in more of a labor-type capacity or as a bartender. She probably could continue to function in such a capacity, especially in housecleaning areas. She would, though, benefit from psychiatric consultation to see if there is a medication regimen that would be effective in reducing her anxiety and increasing her Attention Span. It is felt, thought, that she should be able to manage her own financial affairs.

(R. 225).

Plaintiff argues that the ALJ erred by failing to include limitations by Dr. Hammack, specifically, his conclusions that she "has difficulty in focus and sustained attention," that her "judgment is fair, but would be compromised by her impulsivity and poor attention span," and that "[f]ocus and concentration would be quite difficult for her for up to two hours." (Plaintiff's brief, p. 3). However, there is no indication that Dr. Hammack believed plaintiff to suffer more than moderate impairments in these areas. He concluded, as noted

above, that plaintiff could probably continue her past work, especially in housecleaning. (R. 225).  Although plaintiff takes issue with the ALJ's failure to credit Dr. Hammack's assessment, it does not appear that Dr. Hammack's opinion conflicts significantly with that of Dr. Dillon or with the ALJ's finding.  As the Commissioner argues, it is clear that the ALJ considered Dr. Hammack's report.  (See R. 17-18, 19).

The ALJ's residual functional capacity assessment and his question to the vocational expert at the administrative hearing incorporated the mental residual functional capacity assessment at Exhibit 15, p. 4.  There, a DDS physician – relying on the consultative examination performed by Dr. Dillon (see R. 320)[5] – concluded that plaintiff:

> . . . could not complete detailed tasks but could complete simple tasks [with] no limits.  Contact [with] coworkers and general public should be casual and infrequent.  Supervision should be direct and nonconfrontational.  Changes in the environment should be infrequent and gradually introduced.

(Exhibit 15F, p. 4, R. 306).  Plaintiff cites the requirement from Social Security Ruling 96-8p that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." (Plaintiff's brief, p. 3).  As noted above, however, the ALJ's RFC assessment does not conflict with Dr. Hammack's assessment.  Accordingly, the ALJ did not err by failing to state reasons for rejecting the opinion.

### Plaintiff's Subjective Complaints

Plaintiff argues that the Commissioner failed to apply his own regulations or the

---

[5] Dr. Dillon concluded that plaintiff was "*moderately* impaired in her ability to understand, remember, and carry out instructions and to respond appropriately to supervision, co-workers, and work pressures in a work setting."  (R. 302)(emphasis in original).

Eleventh Circuit pain standard in evaluating plaintiff's subjective complaints of pain, anxiety attacks, and side effects of medication and that his stated reasons for his credibility finding are not supported by substantial evidence. In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record." Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)). "The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is '"not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole."'" Dyer, *supra*, 395 F.3d at 1210 (citations

omitted).

Plaintiff testified that she has pain in both of her hands. She stated that it is hard for her to pick up twenty pounds and that a couple of days before the hearing she could not lift a frying pan out of the oven. (R. 358-59). Plaintiff argues that plaintiff's subjective complaints of hand pain are consistent with her complaints to Lister Hill Health Center on February 26, 2001, March 26, 2001 and May 8, 2001 and to the consultative examiner. (See Plaintiff's brief, p. 6; R. 273-75). The ALJ stated that the record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain alleged, and that "there are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms." (R. 21). The ALJ notes that X-rays of plaintiff's right hand taken at Lister Hill in March 2001 were normal. (R. 17, 273, 279). The ALJ also discusses, in detail, the results of Dr. Soler's consultative examination:

> The claimant revealed in her examination with Dr. Soler dated July 3, 2002, that she has bilateral hand pain of three to four years duration associated with heavy labor relieved with rest. Previous examination two years earlier including X-rays revealed no specific problem. She stated she was told it was some sort of tendonitis problem, and she was not recommended any medication or treatment. The claimant related that she continued to work part time performing housekeeping and outdoor cleaning. She does not use splints or take anti-inflammatories. She stated that she performed her routine housekeeping; she drives; and she had no limitation of standing or walking . . . Dr. Soler noted in his examination of the claimant no pain, no muscle spasm, no tenderness, no crepitus, no effusions, no deformities, no trigger points, no tenderness of her hands or wrists, motor strength of 5/5, and no atrophy. Dr. Soler's examination included a history of chronic bilateral hand pain with a negative examination[.]

(R. 19-20)(citing Exhibit 8F).

As to plaintiff's complaints of disabling anxiety, the ALJ notes plaintiff's limited

medical treatment. He correctly states that there are only two records of treatment in 2002 – plaintiff's visits to Dr. Nichols in January and May. (R. 21). The ALJ specifically indicated that in the January visit, plaintiff reported to Dr. Nichols that she was working in Panama City and that in the May visit, she reported no problems at that time. (R. 19, 21). The ALJ states that plaintiff reported to Dr. Hammack that the Xanax prescribed for her by Dr. Nichols helped her to calm down and focus, and that plaintiff testified at the hearing that she takes Xanax. (R. 19, 225, 361-62). The ALJ also correctly observes that plaintiff's mental problems have not required hospitalization and that she has sought only intermittent treatment. (R. 21, 225).

At the administrative hearing, plaintiff testified that she has side effects from Paxil, which hurts her eyes "a little bit" and makes her chew her mouth, and Seroquel, which makes her go to sleep. (R. 361-62). However, plaintiff also testified that she only takes Seroquel "sometimes." She stated, "I do take it when I know that I need to lay down, I will take it, the Seraquil 'cause I know it's going to make me lay down and go to sleep." (R. 362). Although plaintiff argues that her "subjective symptoms were specifically discussed in the record," she does not direct the court to evidence in the medical record regarding her side effects. The court has noted no indication in the medical record of complaints by plaintiff to her treating practitioners of side effects of Paxil. Under these circumstances, the ALJ was not required to address plaintiff's complaints of side effects from Paxil. See Turner v. Commissioner of Social Security, 182 Fed. Appx. 946 (11th Cir. May 31, 2006)(ALJ did not err in discrediting claimant's testimony regarding side effects where there was no evidence that she consistently

complained to her doctors of side effects.).

Plaintiff did complain to a nurse practitioner at Montgomery Area Mental Health Authority (MAMHA) of drowsiness caused by Seroquel. (R. 340). A January 21, 2004 treatment note reflects that plaintiff had "recently" been prescribed Seroquel but that she would not take it. (R. 347). On January 23, 2004, the CRNP noted that plaintiff "refuses to take Seroquel." (R. 340). On May 24, 2004, the Life Management Center of Northwest Florida recorded, in a "medication treatment planning assessment," that plaintiff stated that she had discontinued Seroquel due to side effects (R. 323) and that she "will not take Seroquel" (R. 324). When plaintiff returned to MAMHA on August 2, 2004, the CRNP recommended that she "resume Seroquel regimen" and gave her a prescription to take 100 mg of Seroquel each morning and 200 mg at bedtime. (R. 337, 338). Plaintiff was to return in three weeks, but did not do so until January 31, 2005. The practitioner's note for that visit states, "no meds at this time," and "encouraged compliance." (R. 336). She gave plaintiff another prescription for Seroquel, this time for a lower dosage of 50 to 100 mg at bedtime only. (R. 336-37). The note for plaintiff's next visit, on March 11, 2005, reflects that plaintiff remained noncompliant with treatment and that she was unable to take Seroquel. The practitioner discontinued the Seroquel prescription and advised plaintiff to "return for medications if she becomes agreeable" and to return to clinic "as needed." (R. 334-35).

In his decision, the ALJ specifically noted plaintiff's report to MAHMA on January 21, 2004 that she was not taking the Seroquel prescribed for her and also observed that on March 11, 2005, plaintiff was reported to be non-compliant with medication. (R. 16-17; see

10

also R. 334, 340, 341, 343, 346, 347). As noted above, plaintiff testified at the hearing that she takes Seroquel only when she knows that she "need[s] to lay down." (R. 362). The record reveals that plaintiff took Seroquel briefly, then discontinued it because of side effects. Plaintiff cannot have suffered side effects from a medication that she refused to take. To the extent that she takes Seroquel when she needs to lie down, it is reasonable to infer that such usage of the drug does not cause plaintiff significant limitations. See Lipscomb v. Commissioner of Social Security, 199 Fed. Appx. 903 (11th Cir. Oct. 17, 2006)("At the administrative hearing, Lipscomb stated that Lorazepam made her dizzy and paranoid. But she also testified that she took the Lorazepam at bedtime, and thus, it is reasonable to infer that she did not suffer significant limitations.").

The court concludes that the ALJ's credibility determination is supported by substantial evidence and that he did not err in failing to credit plaintiff's subjective complaints of disabling limitations.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper legal analysis and, thus, that it is due to be affirmed. A separate judgment will be entered.

Done, this 15th day of March, 2007.

/s/ Susan Russ Walker  
SUSAN RUSS WALKER  
UNITED STATES MAGISTRATE JUDGE